**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL PERRIS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:26-56** |
| **v.** | : | **(JUDGE MANNION)** |
| **LT. GRANITE, *et al*.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the Court are Defendants' motion to dismiss *pro se* Plaintiff Paul Perris ("Perris")'s complaint as well as Perris's motion to appoint counsel. For the reasons stated below, the Court will grant Defendants' motion to dismiss, dismiss Perris's complaint without prejudice to him filing an amended complaint, and deny without prejudice Perris's motion to appoint counsel.

## I. BACKGROUND

### A. Perris's Relevant Criminal Proceedings in the Court of Common Pleas of Centre County

On or about May 19, 2025, the Bellefonte Police Department charged Perris with theft of services – acquisition of services (18 Pa. C.S. §3926(a)(4)) and bad checks (18 Pa. C.S. §4105(a)(1)). *See* Docket, *Commonwealth v. Perris*, No. CP-14-CR-914-2025 (Centre Cnty. Ct. Com.

Pl.)[1] A Magisterial District Justice denied Perris bail on or about August 14, 2025, resulting in his confinement in the Centre County Correctional Facility ("CCCF"). *See id.* Approximately a week later, the Magisterial District Justice bound over Perris's charges to the Centre County Court of Common Pleas for trial. *See id.*

On September 10, 2025, a criminal information was filed. *See id.* However, on December 19, 2025, the Court of Common Pleas dismissed Perris's charges pursuant to Pennsylvania Rule of Criminal Procedure 586, while also requiring Perris to pay the costs of prosecution, restitution in the amount of approximately $5,000 to the victim, the Sheriff's fee, and

[1] The Court takes judicial notice of the docket entries in Perris's underlying state-court criminal case. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (unpublished) ("We may take judicial notice of the contents of another Court's docket."); *Mickell v. Lycoming Cnty. Cent. Collections Off. & Admin.*, 821 F. App'x 74, 75 (3d Cir. 2020) (unpublished) (taking judicial notice of Court of Common Pleas criminal docket); *Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). These dockets are publicly accessible through the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch) (the "Portal"). *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

extradition fees. *See* (Doc. 1-1 at 1).[2] The dismissal Order included a certificate of service, which states that it was served upon the Centre County Probation Department, the Court Administrator's Office, and the Centre County Public Defender's Office. *See* (*id.* at 2).

**B. The Instant Proceedings**

Perris commenced this action by filing his complaint, which the Clerk of Court docketed on January 12, 2026. (Doc. 1.) Perris names as Defendants three individuals allegedly employed at the Centre County Correctional Facility ("CCCF"): (1) Lt. Granite ("Granite"); (2) Correctional Officer Murray ("Murray"); and (3) Counselor Jeirles ("Jeirles"). *See* (*id.* at 1, 2).

---

[2] Rule 586 permits a Court of Common Pleas to dismiss charges upon satisfaction or agreement and provides as follows:

> When a defendant is charged with an offense which is not alleged to have been committed by force or violence or threat thereof, the court may order the case to be dismissed upon motion and a showing that:
>
> (1) the public interest will not be adversely affected; . . .
> (2) the attorney for the Commonwealth consents to the dismissal; . . .
> (3) satisfaction has been made to the aggrieved person or there is an agreement that satisfaction will be made to the aggrieved person; and
> (4) there is an agreement as to who shall pay the costs.

Pa. R. Crim. P. 586.

Perris generally alleges that Defendants unlawfully held him at CCCF beyond his release date. *See* (*id.* at 2–3). He asserts that United States Immigration and Customs Enforcement ("ICE") placed a detainer on him, and he should have been released from CCCF on December 24, 2025, due to ICE's "48 [h]ours detention clause." (*Id.*)[3] However, Defendants held Perris at CCCF until his "[i]mmigration arrest" on December 29, 2025, despite Perris "inform[ing] the detaining officer of this error." (*Id.*)

Based on these allegations, Perris asserts a claim under 42 U.S.C. §1983 for violations of his Fourth Amendment rights to be free from unlawful

---

[3] Defendants attach a copy of the ICE detainer to their motion to dismiss. *See* (Doc. No. 18-2 at 2). The detainer requested that the CCCF:

> **Maintain custody** of [Perris] for a period **NOT TO EXCEED 48 HOURS** beyond the time when he[] would otherwise have been released from your custody to allow [the Department of Homeland Security ("DHS")] to assume custody. This detainer arises from DHS authorities and should not impact decisions about [Perris's] bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.

(*Id.*) The Court may consider the contents of the detainer in resolving Defendants' motion to dismiss. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (explaining that, when resolving a Rule 12(b)(6) motion to dismiss, a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case").

seizures against Defendants in their official and individual capacities. *See* (*id.* at 1–3). For relief, Perris seeks compensatory damages, punitive damages, and "any . . . injunctive relief deemed fit." (*Id.* at 3.)

When Perris filed his complaint, he neither remitted the filing fee nor applied for leave to proceed *in forma pauperis*. As such, an Administrative Order issued on January 13, 2026, which required him to either pay the fee or file an application for leave to proceed *in forma pauperis* within thirty days. (Doc. 3.) Perris timely filed an application for leave to proceed *in forma pauperis* ("IFP Application") on February 2, 2026 (Doc. 4); however, he did not submit a certified copy of his prisoner trust fund account statement as required by the *in forma pauperis* statute. *See* 28 U.S.C. §1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined."). Consequently, another Administrative Order issued requiring the warden of Perris's place of confinement to submit Perris's certified account statement to the Clerk of Court. (Doc. 5.) On February 13, 2026, Perris's certified account statement was docketed with the Clerk of Court. (Doc. 8.)

On February 17, 2026, the Court issued an Order which, *inter alia*, granted Perris's IFP Application and directed the Clerk of Court to send copies of the complaint and waiver of service forms to Defendants. (Doc. 9.) Defendants did not return waiver of service forms within thirty days, resulting in the Court issuing an Order on March 24, 2026, directing the Clerk of Court to issue summonses for Defendants and directing the United States Marshals to serve the summonses and copies of the complaint on Defendants. (Doc. 11.)

Defendants returned waivers of service on April 9, 2026, and they filed the instant motion to dismiss Perris's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a supporting brief, on April 16, 2026. (Docs. 18, 19.) On April 27, 2026, Perris filed (1) a motion to appoint counsel, (2) various exhibits, and (3) a brief in opposition to Defendants' motion to dismiss. (Docs. 23–25.) Defendants then filed a reply brief in further support of their motion to dismiss on May 11, 2026 (Doc. 26), and Perris filed an unauthorized sur-reply brief on May 21, 2026 (Doc. 27). Defendants' motion to dismiss and Perris's motion to appoint counsel are ripe for disposition.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

While the Court at this stage accepts the complaint's factual allegations as true, the Court does not do so to a plaintiff's legal conclusions. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

This federal pleading standard requires district courts to conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Pro se* filings must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the Court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other

litigants." *Id.* Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B. Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Perris's Unauthorized Sur-Reply Brief

Perris did not seek leave of court before filing his sur-reply brief to Defendants' reply brief. *See* M.D. Pa. L.R. 7.7 ("A brief in reply to matters argued in a brief in opposition may be filed by the moving party within fourteen (14) days after service of the brief in opposition. No further briefs may be filed without leave of court."). Although the Court could decline to consider Perris's sur-reply brief due to his failure to seek, and obtain, approval to file it, the Court will, on this occasion only, consider his brief as containing a request for leave to file a sur-reply brief and grant this request. The Court strongly encourages Perris to, at a minimum, review the copy of the various Federal Rules of Civil Procedure and Local Rules that the Clerk of Court provided him upon his commencement of this litigation. *See* (Doc. 2–3); *see also* (Doc. 2-2 at 3 ("*Pro se* prisoners ***must comply*** with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of Court.")). Any future failure to comply with the applicable Federal and Local Rules could result in an adverse determination. *See Vogt*, 8 F.4th at 185 (explaining that *pro se* litigants may not "flout procedural rules—they must abide by the same rules that apply to all other litigants" (citation omitted)).

## B. Defendants' Motion to Dismiss

Defendants contend that the Court should dismiss Perris's complaint because he fails to (1) sufficiently allege their personal involvement, (2) plausibly plead an overdetention claim, and (3) plausibly plead a municipal liability claim. *See* (Doc. 19 at 4–10, 14–15). They also assert that they are entitled to qualified immunity. *See* (*id.* at 10–14). The Court will address each argument in turn.

### 1. Defendants' Personal Involvement

For a plaintiff to plead a plausible Section 1983 claim against an individual defendant, they must sufficiently allege that defendant's personal involvement in the alleged constitutional violation. In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff can show a defendant's personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." *Id.*; *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (explaining that a Section 1983 defendant "must have personal involvement in the alleged wrongs to be liable" and "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved").

Defendants argue that Perris fails to sufficiently allege their personal involvement in his unlawful detention because he fails to "allege the particulars of 'conduct, time, place, and persons responsible.'" (Doc. 19 at 7 (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). They point out that Perris only alleges "in a conclusory fashion that each of [them] held him 'in the county jail beyond [his] release date," and he does not (1) "identif[y] any direct actions taken by each of [them] that could have caused or contributed to [his] continued detention"; (2) "set forth any allegations regarding the[ir] job duties or authority"; (3) "describe with any particularity each of [their] roles in continuing to detain [him]"; (4) "allege that he even had any interactions with [them] related to his continued detention." (*Id.* (second alteration in original)). Overall, they contend that Perris's "conclusory assertions that a Lieutenant, a Corrections Officer, and a Prison Counselor were somehow responsible for his continued detention are insufficient to demonstrate their personal involvement in the same." (*Id.*)[4]

[4] Defendants assert that Perris's failure to sufficiently plead their personal involvement in his complaint warrants dismissal of his complaint with prejudice, and they cite to *Johnson v. Wetzel*, No. 22-cv-382, 2023 WL 4424828 (E.D. Pa. July 7, 2023) in support of their assertion. *See* (Doc. 19 at 8). Although the Court does not fault Defendants for seeking a dismissal with prejudice, their reference to *Johnson* is misleading and unpersuasive for at least two reasons.

*(footnote continued on next page)*

In his response to Defendants' arguments, Perris unfortunately does not explain how the allegations in his complaint plausibly show Defendants' personal involvement in his Section 1983 claims. Instead, Perris attempts to demonstrate their personal involvement through approximately six pages of factual allegations, almost all of which are not included in his complaint. *See* (Doc. 25 at 1–6); *see also* (Doc. 27 at 1–3). As Defendants point out in their reply brief, *see* (Doc. 26 at 2–3), Perris cannot amend his complaint through his arguments in response to their motion to dismiss. *See Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is

---

First, the defendants in *Johnson* moved for partial dismissal of the plaintiff's ***amended complaint***. *See* 2023 WL 4424828, at *1. And, although not referenced in the cited decision, the Eastern District of Pennsylvania ("EDPA") had previously dismissed the plaintiff's original complaint in its entirety without prejudice to him filing an amended complaint as to most of the claims asserted in his original complaint. *See Johnson v. Wetzel*, No. 22-cv-382 (E.D. Pa.), ECF Nos. 11, 12. Thus, the plaintiff already had an opportunity to remedy the deficiencies with his complaint and failed to do so. Second, the EDPA addressed the plaintiff's allegations of personal involvement relating to Dorina Varner, the Chief Grievance Officer of the Commonwealth of Pennsylvania Department of Corrections. *See Johnson*, 2023 WL 4424828, at *5. The plaintiff's allegations in support of his claim against Varner, which the EDPA dismissed with prejudice, related to Varner's handling of the plaintiff's grievance appeal, which required the court to analyze the plaintiff's allegations against very specific caselaw pertaining to a defendant's personal involvement when a plaintiff's allegations pertain only to the defendant's participation in the grievance process. *See id.* at *5 (discussing applicable caselaw relating to a defendant's personal involvement through their role in reviewing or denying an inmate's grievance).

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)); *see also Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012) (unpublished) ("A plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment" (citations omitted)).

Putting aside the information Perris improperly includes in his opposition brief, the Court finds that his allegations in his complaint are sufficient to show their personal involvement in an alleged constitutional violation. In terms of Perris's allegations about the "conduct, time, place, and persons responsible" for the alleged constitutional violation, he alleges that Defendants are the responsible parties, they held him beyond his release date at the CCCF, and they allegedly did so from December 24–29, 2025. Although Defendants understandably prefer that Perris alleged more facts about their precise conduct in his complaint, whether his factual allegations sufficiently show their personal involvement differ from whether those allegations demonstrate the requisite level of plausibility for his overdetention claims against them to proceed further. Therefore, the Court will deny Defendants' motion to dismiss to the extent that they seek dismissal based on their alleged lack of personal involvement in any constitutional violation.

### 2. Plausibility of Perris's Section 1983 Claim

Defendants also move for dismissal of Perris's Section 1983 claim against them because he fails to include sufficient allegations in his complaint to plead a plausible overdetention claim. *See* (Doc. 19 at 8–10). The Court will grant this part of Defendants' motion because the Court agrees with Defendants that Perris fails to plead a plausible overdetention claim in his complaint.

Preliminarily, the Court notes that there is an issue as to which constitutional amendment applies to Perris's claim. Perris references only the Fourth Amendment in his complaint, *see* (Doc. 1 at 2–3), but Defendants appear to argue that the Fourth Amendment is inapplicable here because Perris does not specifically challenge the validity of the immigration detainer in his complaint. *See* (Doc. 19 at 4 (citing *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014))). Defendants then proceed to analyze Perris's claim under the law applicable to Eighth Amendment overdetention claims. *See* (*id.* at 9 (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) and *LeBeau v. Montgomery*, No. 17-cv-38, 2017 WL 5885673, at *6 (E.D. Pa. Nov. 28, 2017)); Doc. 26 at 5 (citing *Sample*)). They point out that to plausibly plead such a claim, Perris must allege that:

> (1) the prison official had knowledge of the prisoner's problem and the risk of overdetention, (2) the official either failed to act or

> took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference, and (3) a causal connection between the official's response and the infliction of unjustified detention.

(Doc. 19 at 9 (citing *Sample*, 885 F.2d at 1110 and *LeBeau*, 2017 WL 5885673, at *6)).

The issue with Defendants' argument is that the Eighth Amendment applies to individuals already convicted and sentenced, *see Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (explaining that the Eighth Amendment applies to individuals who have been convicted and sentenced), and Perris was a pretrial detainee at CCCF at least through the period until the Court of Common Pleas dismissed his charges on December 19, 2025. Because Perris was a pretrial detainee awaiting the resolution of his criminal charges while confined at CCCF, the Fourteenth Amendment's Due Process Clause likely applies to his overdetention claims. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("As a pretrial detainee, Thomas is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs." (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004))); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (explaining that the Eighth Amendment "has no application" until the government obtains a "formal adjudication of guilt," and that pretrial

detainees' rights "are at least as great as the Eighth Amendment protections available to ... convicted prisoner[s]"). Moreover, the Fourteenth Amendment would apply to the extent that Perris's status transitioned to that of an immigration detainee at any point prior to his transfer to ICE custody on December 29, 2025. *See E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019) ("This Circuit has longed viewed the legal rights of an immigration detainee to be analogous to those of a pretrial detainee.").

Defendants have not cited to, and this Court could not locate, the law applicable to a pretrial/immigration detainee's claim that they were wrongfully detained after dismissal of their criminal charges or after the expiration of the forty-eight-hour period described in an immigration detainer. Presuming that the Fourteenth Amendment applies to these types of claims, the Court will apply a similar standard used to evaluate overdetention claims raised under the Eighth Amendment. *See, e.g.*, *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment, we will review Sherelle Thomas's claims for failure to render medical care under the Fourteenth Amendment by applying the same standard used to evaluate claims brought under the Eighth Amendment."); *Stewart-Richardson v. Corr. Officer Yorks*, No. 25-cv-1646,

2026 WL 1760281, at *1 (M.D. Pa. June 18, 2026) (noting that "pretrial detainees' Fourteenth Amendment failure-to-intervene claims are evaluated under the same standards as convicted prisoners' Eighth Amendment claims" (citing *Gorrio v. Briggs*, No. 23-cv-1697, 2025 WL 2177826, at *26 (M.D. Pa. July 31, 2025))); *Carr v. Boran*, No. 24-cv-2192, 2025 WL 259384, at *3 (M.D. Pa. Jan. 21, 2025) ("Fourteenth Amendment failure to protect claims are governed by the same substantive standard as failure to protect claims asserted pursuant to the Eighth Amendment." (citing *Thomas*, 749 F.3d at 223 n.4)). Under this standard, Perris must plausibly allege that (1) the defendant "prison official had knowledge of [his] problem," (2) the defendant prison "official either failed to act or took only ineffectual action under the circumstances indicting that [their] response to the problem was a product of deliberate indifference to [his] plight," and (3) "a causal connection between the official's response to the problem and the infliction of the unjustified detention." *Sample*, 885 F.2d at 1110.

Here, Perris's allegations do not satisfy the requisite standard in large part because he does not plead facts plausibly showing that Defendants had knowledge of his issues with his continued detention. He fails to allege facts demonstrating that, *inter alia*, Defendants were aware of the Court of Common Pleas' dismissal order, that there was an immigration detainer, or

that the immigration detainer requested that prison officials continue to detain him for forty-eight hours. In addition, although Perris alleges that he "informed the detaining officer of this error" and did not obtain an "adequate remedy" in response, *see* (Doc. 1 at 2), he includes these allegations in the section of the form civil rights complaint pertaining to exhaustion of his administrative remedies, and he does not identify the "detaining officer" as one of the three Defendants or describe the "error" he mentioned to said unidentified officer. (*Id.*) As such, the Court finds that Perris has not pleaded a plausible Fourteenth Amendment overdetention claim against Defendants in his complaint.

Regarding the Fourth Amendment, the Court agrees with Defendants that it does not appear that Perris challenges the validity of the immigration detainer. *See* (Doc. 19 at 4). However, the Court disagrees with Defendants that Perris "cannot make out [a] traditional Fourth Amendment claim" (*id.* at 11), at least in a general sense.[5]

[5] The Court recognizes that, to the extent that the Fourth Amendment would apply to Perris's allegations, he could not also proceed on a Fourteenth Amendment substantive due process claim under the "more-specific-provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

At least one federal district court has considered whether an individual's continued detention based on an immigration detainer violates the Fourth Amendment, albeit under different factual circumstances than those alleged here. *See, e.g.*, *Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 944 (D. Minn. 2017) (addressing plaintiff's claim "that he was denied the right to bail and was held for approximately 10 days on the basis of his immigration detainer" under the Fourth Amendment and explaining that "[t]he question whether [plaintiff's] continued confinement violated the Fourth Amendment turns on whether [d]efendants had probable cause to detain [plaintiff] after he would have been released from detention on the state charges" (citing *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015))). If the Fourth Amendment applies here, then Perris's allegations would have to plausibly show that Defendants lacked probable cause to detain him. *See id.*; *see also Barnett v. City of Philadelphia*, 498 F. Supp. 3d 700, 709 (E.D. Pa. 2020) ("A warrantless arrest is reasonable under the Fourth Amendment if there is probable cause to believe that the person being arrested has committed, or is in the process of committing, a crime." (citing *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56 (2018))). Perris's allegations can be liberally construed to include such an allegation, *i.e.*, that even if the immigration detainer provided probable cause for Defendants to continue to detain him at CCCF, any

probable cause ceased to exist once the forty-eight-hour period referenced in ICE's request expired. Nevertheless, Perris still fails to assert a plausible Fourth Amendment claim because he does not allege any facts showing that these individual Defendants were aware of the dismissal of his criminal charges or any aspect of his immigration detainer. Therefore, whether the Court considers Perris's constitutional claims against Defendants as arising under the Fourth and/or Fourteenth Amendments, the Court finds that Defendants have met their burden to show that he fails to state a plausible claim for relief. Accordingly, the Court will grant Defendants' motion to dismiss Perris's overdetention claims. This dismissal will be without prejudice to Perris filing an amended complaint because the Court does not find that allowing him leave to amend would be futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### 3. Official-Capacity Claims

Defendants move to dismiss Perris's official-capacity claims against them. *See* (Doc. 19 at 14–15). Because the Court concludes that Perris fails to allege a viable underlying violation of his constitutional rights, he has not pleaded viable official-capacity claims against Defendants. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Moreover, even if Perris had a viable underlying constitutional claim, the Court would dismiss his official-capacity claims because such claims asserted against municipal officials like Defendants are the same as claims against the municipalities that employ them, *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."), and Perris does not include the relevant municipal-liability allegations in his complaint. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that, to state claim for municipal liability, section 1983 plaintiff must allege that the defendant municipality's policies or customs caused alleged constitutional violation); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (explaining that a plaintiff pleading a municipal liability claim "must identify [the] custom or policy, and specify

what exactly that custom or policy was" to satisfy the pleading standard); *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must also allege that the policy or custom was the 'proximate cause' of [their] injuries." (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996))). Accordingly, the Court will grant Defendants' motion to dismiss insofar as they seek dismissal of Perris's Section 1983 official-capacity claims against them. These claims will be dismissed without prejudice to Perris repleading them in an amended complaint.

**4. Qualified Immunity**

Although Defendants argue in their motion to dismiss that they are entitled to qualified immunity on Perris's individual-capacity claims against them, *see* (Docs. 19 at 10–14; 26 at 3–6), the Court will refrain from addressing their argument at this time because the Court concludes that Perris fails to state a claim against them. *See, e.g.*, *Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 698 n.22 (M.D. Pa. 2023) ("[B]ecause the Court concludes that the Amended Complaint fails to state a claim against the Individual Defendants, it declines to address in this opinion Defendants' assertion that the Individual Defendants are entitled to qualified immunity."). Defendants may re-raise their qualified immunity argument should Perris file an amended complaint.

### C. Perris's Motion to Appoint Counsel

Perris seeks the appointment of counsel to assist him in prosecuting this matter. *See* (Docs. 23, 24). The Court notes that Perris has no constitutional or statutory right to appointment of counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997). Nevertheless, the Court has discretion to request "an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Such a request should be made if circumstances indicate "the likelihood of substantial prejudice to [the plaintiff] resulting, for example, from [their] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).

When evaluating the expenditure of the "precious commodity" of volunteer counsel, a court must first determine whether the plaintiff's case has some arguable merit in fact and law. *See Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold hurdle, then the court is to consider other factors, including: (1) the plaintiff's ability to present their own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such an

investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether the plaintiff can retain and afford counsel. *See Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019) (citations omitted). This list, however, "is not meant to be exhaustive." *Tabron*, 6 F.3d at 157; *see also Houser*, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,]" and that "[t]hey are not exhaustive, nor are they each always essential"). Rather, the court must determine on a case-by-case basis whether a request for appointed counsel is warranted. *See Tabron*, 6 F.3d at 157–58.

In the instant case, the Court has already determined that Perris fails to state a plausible claim for relief in his complaint. As such, Perris fails to meet the threshold issue for appointment of counsel at this time, and the Court will deny his motion for appointment of counsel without prejudice to him refiling it or the Court reconsidering the issue *sua sponte* if the circumstances so warrant.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss Perris's complaint, dismiss Perris's complaint without prejudice to

him filing an amended complaint, and deny without prejudice Perris's motion to appoint counsel. An appropriate Order follows.[6]

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 29, 2026**
26-0056-01

[6] The Order will provide Perris with more information on the filing of an amended complaint.